**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SM ENTERTAINMENT CO., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 25-cv-15072 |

**COMPLAINT**

Plaintiff SM ENTERTAINMENT CO., Ltd. ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the "Counterfeit Products"). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling Counterfeit Products. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Plaintiff SM ENTERTAINMENT CO., Ltd. is a South Korean music production and distribution company, and is one of the world's leading music, media, and entertainment companies.

5. Dubbed "The Company that Created K-Pop," since 1995, Plaintiff has operated as a talent agency, record label, production company and music publishing house. K-Pop is a music subgenre originating from South Korea characterized by pop music fused with rock, hip-hop, and techno, with a focus on visual appeal and performance. Plaintiff created the idol-system central to the K-Pop genre, wherein music and entertainment companies train and support performers, presenting the public with excellent artists and products that fans desire.

6. Products sold under the SM brand and associated with Plaintiff include items such as musical records, apparel, accessories, decor, appliances, bedding, books, toys, food and beverages, and souvenirs (collectively, the "SM Products"). SM Products are distributed and sold to consumers throughout the United States, including in Illinois, through authorized retailers and websites, the global.shop.smtown.com website.

7. As part of Plaintiff's operations, Plaintiff identifies, trains, and promotes new musical artists and groups (the "SM Artists"). As of August 2025, the SM Artists collectively booked revenue in excess of $218 million for the first 8 months of the year.

8. Plaintiff's most successful groups include TVXQ!, Super Junior, Girls' Generation, SHINee, EXO, NCT (NCT U, NCT 127, NCT DREAM, NCT WISH), WayV, RIIZE, aespa, and Hearts2Hearts.

9. NCT is one of the most successful K-Pop groups of all time, with over 24 million worldwide album sales. In 2023, NCT Dream album *ISTJ* topped international charts in the top five albums sold worldwide, while its second album of the year, *Fact Check*, was in the top 20.

10. Plaintiff is also home to numerous successful solo artists including, but not limited to, Kangta, Taeyon, and Kai.

11. Plaintiff's solo artists also include BoA, who is often referred to as the "Queen of K-pop." BoA has sold over ten million albums throughout her career.

12. Plaintiff has registered the following marks associated with the SM Artists with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 6,669,599<br>7,185,478<br>7,185,479<br>7,185,480<br>7,204,275 | AESPA |
| 7,334,310<br>7,058,071<br>6,689,129 | æspa |
| 6,669,601<br>7,185,482<br>7,070,935<br>7,089,172<br>6,874,893 | æspa |
| 7,070,937<br>7,773,061<br>7,257,061<br>7,064,686<br>6,682,239 | ÆSPA |
| 6,696,585<br>7,064,688<br>7,070,939<br>7,070,938<br>7,064,687 | 에스파 |

4

| | |
|---|---|
| 7,656,945 | GIRLS ON TOP |
| 5,666,971 | GIRLS' GENERATION |
| 5,666,970 | 소녀시대 |
| 7,198,436 | GISELLE |
| 7,658,197 | KRUCIALIZE |
| 7,204,284<br>7,567,999<br>7,204,285 | KWANGYA |
| 7,026,586<br>7,031,674 | MAX CHANGMIN |
| 7,638,947 | nævis |
| 6,383,295 | NCT |
| 7,198,435 | NINGNING |
| 7,629,270<br>6,743,753 | PINKBLOOD |
| 7,790,124 | RISE&REALIZE RIIZE |
| 5,633,352 | SHINEE |
| 5,666,967<br>5,666,968 | 샤이니 |
| 6,997,351 | U-KNOW YUNHO |
| 6,254,244 | SuperM |

13. Plaintiff, along with the numerous recording and publishing houses it has founded, records, publishes, produces, and promotes music from the SM Artists and musical legends from

5

around the world under SM Classics, ScreaM Records, and KRUCIALIZE, among many others. Plaintiff has also registered the following marks with the United States Patent and Trademark Office:

| Registration Number | Trademark |
|---|---|
| 6,861,855 | [SM logo] |
| 7,209,829 | [SM] Culture Technology |
| 7,033,477 | [SM] Culture Universe |
| 6,083,801<br>5,993,384 | SM NEO CULTURE TECHNOLOGY |
| 5,993,383 | SM NEW CULTURE TECHNOLOGY |
| 6,770,731 | SMCT |
| 7,045,661 | SMCU |
| 7,658,196 | CRUCIALIZE |

14. True and correct copies of the United States Registration Certificates for the trademarks listed in the tables above (collectively, the "SM Trademarks") are attached hereto as **Exhibit 1**.

15. The U.S. registrations for the SM Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the SM Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the SM Trademarks pursuant to 15 U.S.C. § 1057(b).

16. The SM Trademarks are distinctive when applied to the SM Products, signifying to the consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards.

17. The SM Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of the SM Products have enabled the SM brand to achieve widespread recognition and fame and have made the SM Trademarks some of the most well-known marks in the entertainment industries. The widespread fame, outstanding reputation, and significant goodwill associated with the Plaintiff have made the SM Trademarks invaluable assets of Plaintiff.

18. Plaintiff has expended substantial time, money and other resources in advertising and promoting the SM Trademarks. In fact, Plaintiff has expended millions of dollars in advertising, promoting, and marketing featuring the SM Trademarks. SM Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the SM Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. SM Products have become among the most popular of their kind in the U.S. and the world. The SM Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the SM Trademarks is of incalculable and inestimable value to Plaintiff.

**The Defendants**

19. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

20. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

21. The success of Plaintiff's brand has resulted in significant counterfeiting of the SM Trademarks. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports,

according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

22. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

23. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id*.; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[5] *Id.* at 22.

[6] *Id.* at 39.

[7] Chow, *supra* note 4, at 186-87.

U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois. Screenshots evidencing Defendants' infringing activities are attached as **Exhibit 2**.

24. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of its SM Trademarks, and none of the Defendants are authorized retailers of genuine SM Products.

25. Many Defendants also deceive unknowing consumers by using the SM Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for SM Products. Other e-commerce stores operating under the Seller Aliases omit using SM Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for SM Products.

26. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

27. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

28. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

29. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

30. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters

regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

31. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the SM Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

32. Defendants' unauthorized use of the SM Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered SM Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SM Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from SM Products offered, sold, or marketed under the SM Trademarks.

35. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the SM Trademarks without Plaintiff's permission.

36. Plaintiff is the exclusive owner of the SM Trademarks. The United States Registrations for the SM Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the SM Trademarks and are willfully infringing and intentionally using counterfeits of the SM Trademarks. Defendants' willful, intentional, and unauthorized use of the SM Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

37. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

38. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SM Trademarks.

39. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

40. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

41. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

42. By using the SM Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

43. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

44. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the SM Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SM Product or is not authorized by Plaintiff to be sold in connection with the SM Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SM Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the SM Trademarks;

  c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

  d. further infringing the SM Trademarks and damaging Plaintiff's goodwill; and

  e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the SM Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction including, without limitation, any online marketplace platforms such as Amazon, eBay, PayPal, and Temu (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the SM Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SM Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SM Trademarks;

5) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 15 U.S.C. § 1117(a); and

6) Award any and all other relief that this Court deems just and proper.

Dated this 11th day of December 2025.        Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Luana Faria de Souza
Rachel M. Ackerman
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
lfaria@gbc.law
rackerman@gbc.law

*Counsel for Plaintiff*
*SM ENTERTAINMENT CO., Ltd.*